No. 14.—JAMES P. GUERRY, plaintiff in error, *vs.* THOMAS J. PERRYMAN, for the use of JOHN DENNARD, defendant.

[1.] The assignee of a chose in action, *not negotiable,* takes it subject to all the equities which existed between the assignor and the maker thereof, at the time of the assignment; and all such equities as may attach in favor of the maker, *before notice* of such assignment, by the assignee to the maker.

[2.] When, by a decree of a Court of Equity, a specific sum of money was decreed to be due to the maker of an *unnegotiable* promissory note, by the payee thereof: *Held,* that such decree could not be impeached by *extrinsic* evidence, so as to impair or defeat the equitable right of such maker to set off such decree for the *full amount* thereof, against such note, in the hands of

an assignee, for a valuable consideration, but who had never given any no-
tice to the maker of the note of such assignment.

[3.] On the trial of an Equity cause in the Superior Courts, and evidence in-
troduced by each party, the counsel for the complainant in the bill, is enti-
tled to open and conclude the argument to the Jury.

In Equity; Sumpter Superior Court. Tried before Judge
WARREN, November Term, 1848.

Thomas J. Perryman, for the use of John Dennard, brought
suit against James P. Guerry, on three promissory notes, not ne-
gotiable, and payable to Thomas J. Perryman, as administrator of
James R. Lowry, deceased. Guerry filed his bill, setting out
that the above notes were given by him for the purchase of prop-
erty sold at the sale of James R. Lowry's estate; that he mar-
ried the daughter of said deceased, and was a distributee of said
estate; that he had filed a bill against Perryman, the adminis-
trator, for his distributive share, and recovered a decree for $2048
64, which was still due and unpaid; that Perryman had fled to
parts unknown, leaving no visible property or means of payment;
that Dennard was confederating with Perryman, and was a
mere agent of his in the collection of these notes, which he char-
ges, at the time they were given, were agreed to be received in
payment of his distributive share, and that he had no notice of
their assignment. The bill prayed an injunction of the pending
suit, and that the notes should be given up to be cancelled, and
entered as a credit on said decree.

Dennard, in his answer, denied that he was holding the notes
for Perryman, but that he gave a full and valuable consideration
therefor, without notice of the original consideration of the same;
having purchased them of Hardy Durham, who was the security
of Perryman on his administration bond. The answer admitted
the decree against Perryman, but denied that that amount was
due to Guerry, but insisted that suit had been brought against
Durham, the security, and judgment recovered for all that was
really due on said administration, which judgment had been paid
off.

Complainant filed a replication, denying specifically, the facts
alleged in the answer, with reference to the decree against Per-
ryman.

Guerry *vs.* Perryman.

At the November Term, 1848, the Court ordered both causes to be submitted to a Special Jury together.

Much testimony was offered and admitted by the Court, to show that the decree against Perryman was for too large a sum. To the introduction of which testimony, the plaintiff in error excepted, on the ground that the decree was conclusive against Perryman and his assignee.

The testimony being closed on both sides, the Court ordered the defendant's counsel, in the Common Law action, to open the argument, and the plaintiff's (Dennard's) counsel to conclude. To which decision, Guerry, by his counsel, excepted.

The Court charged the Jury, that the possession of a chose in action, not negotiable, the holder having paid a valuable consideration for it, is *prima facie* evidence of equitable ownership, and constitutes an equitable right in the possession.

Complainant's counsel requested the Court to charge, that if such holder had purchased said paper from the payee, for a valuable consideration, yet, in order to recover on said notes, divested of the equities between the maker and payee, it must appear that such equities arose after such purchase and after notice of such purchase to the maker ; which charge the Court refused to give, but charged that such purchaser will take the paper subject to all the equities between the maker and payee, and that the doctrine of notice does not obtain, unless Guerry had paid Perryman the amount of the notes.

The Court farther charged, that it made no difference whether Durham purchased the notes before or after the decree against Perryman, nor whether Guerry had notice before or after the decree ; that the date of the decree has nothing to do with the case ; such decree, though conclusive against Perryman, is not conclusive against Durham or Dennard ; and that the original indebtedness of Perryman to Guerry, independent of the decree, is the equity that attaches to said notes.

The Court farther charged, that if the Jury shall believe from the evidence, that Durham got the notes from Perryman, for his indemnity as security on Perryman's bond, then it makes no difference when Durham got said notes ; for when Durham settled with the heirs of Lowry, on the judgment against him, then he had an equity in the notes, to reimburse himself, and only subject to the equity arising from the original indebtedness of Per-

ryman to Guerry, of which the decree of Guerry against Perryman, is *prima facie* evidence.

To all of which charge, counsel for Guerry excepted, and now alleges the same as error.

SULLIVAN and B. HILL, for plaintiff in error, cited the following authorities, in support of the several grounds of error alleged :

1 *Green. Ev.* 542, '3, 567. 1 *Phil. Ev.* 324. 17 *Sergt. & Rawle,* 324. 5 *Gill & J.* 58. 9 *John. R.* 64. 1 *Smith's Lead. Cas.* (18 *Law Lib. top page,* 447, 450.) 17 *John. R.* 287. 1 *Mass.* 119. 2 *Ib.* 96. 5 *Cow.* 376. 13 *Mass.* 307. 3 *Green. R.* 464.

E. R. BROWN, for defendant, cited :

*Best on Pres.* 87. *Meghan vs. Mills,* 9 *John.* 64. *Briggs vs. Dorr,* 19 *Ib.* 96. 2 *Smith's Lead. Cases,* 438. *Howard vs. Mitchell,* 14 *Mass.* 241. 1 *Phil. on Ev.* 322. 3 *Ala. R.* 568. *Denton vs. Livingston,* 9 *John.* 97. *Ingalls vs. Lord,* 1 *Cow.* 140. *Blake vs. Irwin,* 3 *Kelly,* 345. *The Ins. Co. vs. Power,* 3 *Paige,* 365.

*By the Court.*—WARNER, J. delivering the opinion.

Three grounds of error are assigned upon the record in this case, to the judgment of the Court below :

1st. Because the Court erred in admitting evidence going to show that the decree against Perryman was for too large an amount.

2d. Because the Court erred in not charging the Jury as requested by complainant's counsel, and charging them as stated in the record.

3d. Because the Court erred in deciding that the defendant's counsel in the Common Law action, and counsel for the complainant in the bill, should open the argument to the Jury; and that the counsel for the plaintiff in the Common Law action and counsel for the defendant in the Equity cause, should conclude the argument.

There are several *specifications* of error made on the record,

but they are all embraced in the three foregoing grounds of exception taken to the decision of the Court below.

[1.] When this cause was before us on a former writ of error, we held that the decree against Perryman was *conclusive against him ;* that it was *conclusive evidence of his indebtedness to Guerry, the amount specified in that decree.* 2 *Kelly,* 65. Suppose the suit on the notes had been instituted by Perryman, the payee, against Guerry, the maker, instead of Dennard, the assignee of Perryman, could this decree in Guerry's favor, against Perryman, have been allowed as a set-off against the notes ? Most certainly—and why ? Because the decree furnishes *conclusive evidence* that Perryman is indebted to Guerry the sum of money specified in the decree; nor would it be competent, in a suit on the notes by Perryman against Guerry, for Perryman to introduce evidence to impeach the decree, when offered in evidence by Guerry as a set-off, or to show that it was rendered for too large an amount. Dennard, who derives his title from Durham, and Durham from Perryman, to these *unnegotiable* notes, can no more impeach this decree, or show that it was rendered for too much, for the purpose of defeating Guerry's equity, arising under that decree, than Perryman, their assignor, could do. In relation to the equities which existed between Perryman and Guerry, at the time the decree was rendered, the same attach now in favor of Guerry, against the notes in the hands of Perryman's assignees. The record does not show that Perryman's assignees, either Durham or Dennard, ever gave *notice* to Guerry, the maker of the notes, that they were the assignees thereof, or that they had any other equity growing out of such assignment, than what existed between their assignor and the maker. The rule, with regard to the assignment of choses in action, *not negotiable,* we understand to be, that every person who takes an instrument, *not assignable by the terms of it,* must take it principally on the credit of him from whom he receives it, for it is always liable to be defeated by equitable circumstances subsisting between the *original contracting parties,* being taken legally subject to *all the equities of the original debtor. Willis vs. Trambly,* 13 *Mass. R.* 206. *Chamberlain vs. Gorham,* 18 *John.* 144. *Hatch vs. Greene,* 12 *Mass. R.* 201. *Murray vs. Lylburn,* 2 *Johns. Ch. R.* 441. In *Brashear vs. West, et al.* (7 *Peters,* 609,) the Court settled this principle, in regard to the assignment of choses in action in Equity. If subsequent to the assignment being

made, and before *notice* of it, any counter claims be acquired by the *debtor*, these claims may unquestionably be sustained ; .but if they be acquired *after notice*, Equity will not sustain them.

[2.] So far from the equitable right of Guerry to have the decree against Perryman set off against the notes, having been acquired by him *after notice* of the assignment of the notes to Durham or Dennard, by Perryman, there is no evidence whatever, that they, or either of them, ever gave him *any notice* of such assignment. The counsel for the complainant requested the Court to charge the Jury, that if Dennard, the holder of the notes, had purchased them for a valuable consideration from the payee, yet, in order to recover on said notes, *divested of the equities between the maker and the payee*, it should appear that such equities arose after such purchase, and *after notice of such purchase to the maker ;* which charge the Court refused to give, but on the contrary, charged the Jury, among other things, to the effect that the doctrine of notice, as requested by the complainant's counsel, was not applicable to the facts of this case.

For the reasons already stated, we think the Court ought to have charged the Jury as requested; and that it was error in refusing so to charge ; and that the charge, as given, was erroneous in point of law. These notes *not being negotiable*, although Dennard may have paid a valuable consideration for them, without notice of the existing equity between Perryman and Guerry, at the time of the assignment of the notes ; yet he holds them subject to *that equity. Chamberlain vs. Day*, 3 *Cowen's R.* 353. The law which governs and must control this case is, that the decree in favor of Guerry against Perryman, is *conclusive evidence* of Perryman's indebtedness to Guerry, the amount of money specified in the decree. Guerry had the equitable right to set off the amount due him by the decree from Perryman, in a suit on the notes by Perryman against him. Dennard having derived his title to the notes from Durham, and Durham from Perryman, they, as the assignees of Perryman, stand in his shoes, and the same equities attach to the notes in their hands in favor of Guerry, as would have attached to them in the hands of Perryman, had the suit been instituted on the notes by Perryman. There being *no notice* to Guerry, of the assignment of the notes by Perryman, to the assignees, or either of them, *prior* to the rendition of the decree against Perryman, in favor of Guerry, or at any other time,

Guerry is entitled to have the *full amount* of the decree rendered against Perryman, in his favor, set off against the notes now in suit, in the name of Dennard as the holder thereof; and *extrinsic* evidence is not admissible to impeach or reduce the amount of that decree.

[3.] Some confusion appears to have been produced in the trial, in consequence of both suits having been submitted to the Jury at the same time.   As the Court of Chancery had acquired jurisdiction of the cause, it would, in our judgment, have been more regular for that Court to have proceeded, and to have made a final decree in the cause, definitely settling the rights of the parties, without blending the Common Law suit and the suit in Equity, together; for it is nothing more or less than a suit in Chancery, to enforce the equities of Guerry against the notes in the hands of Dennard.

It was a distinct and independent suit on the Chancery side of the Court, and we have not been able to perceive any reason why it should not have been treated so at the trial, or why the trial should have been embarrassed with the Common Law suit which had been *enjoined* by the interlocutory order of the Chancellor.   Viewing the suit as a proceeding in Chancery exclusively, the solicitor for the complainant in the bill was entitled to open and conclude the argument to the Jury, and not the counsel for the plaintiff in the Common Law action which had been enjoined.   Let the judgment of the Court below be reversed.