## 12060. BANK OF MORGAN v. REID *et al.*

JENKINS, P. J. 1. Unpaid stock subscriptions are corporate assets, and constitute a trust fund for the benefit of creditors. *Chappell* v. *Lowe*, 145 *Ga.* 717 (3) (89 S. E. 777). A judgment creditor of an insolvent corporation, suing exclusively for his own benefit, may maintain against one or more of the stockholders a suit to recover balances due on their stock subscriptions; or all of such stockholders may be joined in one suit. Civil Code (1910), § 2251; *Harrell* v. *Blount*, 112 *Ga.* 711 (4), 718 (38 S. E. 56); *Allen* v. *Grant*, 122 *Ga.* 552, 557, 558 (50 S. E. 494); *Carlisle* v. *Ottley*, 143 *Ga.* 797 (1, 2) (85 S. E. 1010, L. R. A. 1917C, 393, Ann. Cas. 1917A, 573). In such a suit an entry of nulla bona is one method of showing the insolvency of the corporation debtor. *Jennings* v. *National Bank of Athens*, 74 *Ga.* 783 (2 *c* ).

2. The general rule is that dividends can be declared and paid only " out of the actual legitimate net earnings," and " the difference between the present value of all the corporate assets and the amount of all losses, expenses, other charges and liabilities, including the capital stock, constitutes net earnings for the purpose of dividends." *Mangham* v. *State*, 11 *Ga. App.* 440 (2) (75 S. E. 508); Park's Code, § 2225 (a); Penal Code (1910), § 740; 14 Corpus Juris, 800. " The right to declare a dividend depends upon the state of the company's finances at the time when the dividend is declared. The question usually is, whether or not there would remain a net increase upon the original investment, after deducting from the assets of the company all present debts and making provision for future contingent claims." *Crawford* v. *Roney*, 130 *Ga.* 515 (5, 6) (61 S. E. 117); *Roney* v. *Crawford*, 135 *Ga.* 1, (1), 2 (68 S E. 701). Dividends cannot be paid out of capital stock, since the whole of the capital stock is a trust fund for the payment of the debts contracted upon the faith of it, which the stockholders cannot divert from that object, by distributing it as dividends, or otherwise dividing it among themselves. *Reid* v. *Eatonton Mfg. Co.*, 40 *Ga.* 98, 104 (2 Am. R. 563); *Fitzpatrick* v. *McGregor*, 133 *Ga.* 332 (2), 339 (65 S. E. 859, 25 L. R. A. (N. S.) 50); *Coggeshall* v. *Ga. Land & Investment Co.*, 14 *Ga. App.* 637, 643 (82 S. E. 156); 14 Corpus Juris, 800, 806.

3. Since every corporation is a distinct legal entity, and, as such, owns the property belonging to it, its stockholders as individuals are not entitled to demand the profits of the corporation until the profits have been set aside by the directors or proper corporate authorities empowered for that purpose. *Central of Ga. Ry. Co.* v. *Central Trust Co.*, 135 *Ga.* 472, 474, (2), 491, 492 (69 S. E. 708); 14 C. J. 805, 807. Dividends may be paid in cash, scrip, stock, and even in real estate or other property, where paid from the net profits exclusive of liabilities and of capital stock (14 C. J. 811), unless prohibited by statute or by the charter. While the balance due on corporate stock may be thus paid, under proper agreement with the officers, directors, or other stockholders, yet such a payment can neither be effected by an unearned dividend (*Roney* v. *Crawford*, supra), nor by mere increment of the capital assets where there is no actual distribution thereof A mere general " understanding " between the stockholders at the time of the organization, that whenever the profits should reach an amount equal to the minimum unpaid capital stock, such subscriptions should be considered paid, would not amount to an actual distribution for such purpose.

4. The court did not err in refusing to charge, as requested by the plain-
tiff, that "the stockholders cannot evade this requirement of the law
by using the profits arising from the business of the corporation,
and thereby use such profits in lieu of the lawful requirement and de-
feat the purpose of the law to the effect that the full amount of the
stock must be paid in." Such a request did not adequately embody a
correct statement of the principles applicable to the case, as decided
above.

5. Under the rules stated in the first three paragraphs above, it was error
for the court to charge that "the capital stock of a corporation, or
subscription to the capital stock, may be paid in by applying the earn-
ings or surplus of such corporation to the payment of the subscriptions
to the capital stock," this language not limiting "earnings" to net
earnings, and not being otherwise qualified or elaborated so as ade-
quately to state the correct legal rule.

*Judgment reversed. Stephens and Hill, JJ., concur.*

DECIDED JUNE 6, 1921.

Complaint; from Decatur superior court — T. S. Hawes,
judge pro hac vice. December 13, 1920.

Bank of Morgan obtained a judgment against Clardy Lumber
Company, a corporation. A return of nulla bona was entered
by the sheriff on the execution. The bank then sued J. A. Reid
and Mrs. M. J. Reid, stockholders of the corporation from the
time of its organization, and A. J. Tyson and O. P. Stubbs, who
bought the stock of J. G. Johnson and Mrs. M. M. Johnson, the
other two original stockholders. The petition alleged the insol-
vency of the corporation, and prayed judgment against its stock-
holders for the amount of their unpaid subscriptions. It was un-
disputed that only $2,200 of the $5,000 minimum capital stock
provided by the charter had ever been paid by the original stock-
holders or their transferees, individually, in money or other prop-
erty, but the defendants testified that at the time of their organi-
zation they had an informal understanding that when the cor-
porate assets or earnings of the corporation reached the amount
of the minimum capital stock, their shares should be considered
paid. They further testified that prior to the company's insol-
vency, an inventory showed assets of between $6,000 and $6,500;
and they "considered" that this effected a payment of their
subscriptions. The plaintiff offered in evidence the transfer from
Mr. and Mrs. Johnson to Tyson and Stubbs, which recited "that
twenty-two hundred dollars has been actually paid into said
corporation." Johnson testified, that this transfer was made at
the time of or after the taking of the inventory; that at the time
of the transfer the company owed $2,700, and that a list of these

liabilities was delivered to the transferees. No entry of the alleged "understanding" between the original stockholders appears to have been placed on the minutes of the company or reduced to writing; nor was there evidence of corporate action by directors or stockholders by which any part of the net earnings, surplus, or assets was segregated as dividends or credited to any individual stockholder in payment for his stock.

After verdict for the defendants, the plaintiff moved for a new trial on the general grounds and on exceptions to the charge of the court, the motion was overruled, and the movant excepted to that judgment.

*H. G. Bell, A. L. Miller, E. L. Smith,* for plaintiff.